UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| EDUARDO ACOSTA SOLANO, | ) | |
| Institutional ID No. 89019-198, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:14-CV-010-BG |
| K DIXON, Warden, *et al.*, | ) | ECF |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### Statement of the Case

Appearing *pro se* and *in forma pauperis*, Plaintiff Eduardo Acosta Solano filed this action complaining of events that occurred during his incarceration at the Giles W. Dalby Correctional Facility (Dalby Facility), a private correctional facility operated by Management Training Corporation pursuant to a contract with the Federal Bureau of Prisons (BOP). He claims that the Defendants acted with deliberate indifference to his serious medical needs during his incarceration at the Dalby Facility. He seeks compensatory, punitive, and exemplary damages, and costs and fees.

The United States District Court transferred this case to the undersigned United States Magistrate Judge for further proceedings on May 5, 2014. The undersigned thereafter reviewed authenticated records from the Dalby Facility and on November 20, 2014, entered an order to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). The order required Solano to complete the questionnaire within thirty days from the date of the order. (ECF No. 10.) Solano completed and returned the questionnaire on December 19, 2014 (ECF No. 11.)

Solano has not consented to proceed before the undersigned magistrate judge. Pursuant to the order of transfer, the undersigned enters this report and recommendation and recommends that this action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

### Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2014); *see also* § 1915A(b) (applying to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a frivolous determination, the court may consider reliable evidence such as the plaintiff's allegations, answers obtained through a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991).

### Discussion

Solano complains of constitutional violations that allegedly occurred during his incarceration as a federal prisoner at the Dalby Facility. He seeks monetary damages. The court therefore construes his claims as brought pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994) (construing a federal prisoner's civil rights complaint as an action brought

pursuant to *Bivens*). In *Bivens*, the United States Supreme Court recognized a cause of action for money damages against federal officials alleged to have committed constitutional violations. *Bivens*, 403 U.S. at 389. The purpose of *Bivens* is to deter, by threat of suit, individual federal officers from abusing their constitutional authority and engaging in unconstitutional acts. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

However, where existing processes—such as state and federal tort claims, suits for injunctive relief, or prison administrative procedures—provide for formal review of prison practices and remediation, the Supreme Court has been hesitant to extend *Bivens* liability. *See Minneci v. Pollard*, 132 S. Ct. 617, 623–24 (2012) (declining to imply a *Bivens* action against personnel of a privately operated federal prison because state tort law provided an adequate remedy for the claimed Eighth Amendment violations); *Malesko*, 534 U.S. at 72–74 (declining to extend *Bivens* to allow an implied damages remedy against private entities acting under color of federal law; for example, a privately operated prison). Thus, a federal prisoner bringing suit for damages against employees of a privately operated federal prison must look to state tort law for redress when the conduct at issue falls within its scope. *Minneci*, 132 S. Ct. at 626. The remedies available through *Bivens* and state tort law "need not be perfectly congruent" so long as they "provide roughly similar incentives for potential defendants to comply with the Eighth Amendment" and "roughly similar compensation to victims . . . ." *Id.* at 625.

Here, Solano alleges that the Dalby Facility, Warden Dixon, and Associate Warden Bryan—a privately operated federal prison and individuals employed there—denied him adequate medical care. Under Texas law, a prisoner alleging Eighth Amendment violations may bring an action for monetary damages against a prison employee. *See Birdo v. Debose*, 819 S.W.2d 212, 215–16 (Tex.

3

App.—Waco 1991, no writ). Further, inmates may pursue medical malpractice claims against prison healthcare providers. *See Tajeda v. Gernale*, 363 S.W.3d 699, 701 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (denying summary judgment and allowing a former inmate's medical malpractice action to proceed). Because Texas tort law provides an adequate alternative remedy, *Bivens* does not authorize an action for monetary damages against Dalby Facility, Warden Dixon, and Associate Warden Bryan based on a claim of inadequate medical care. *See Minneci*, 132 S. Ct. at 626. Consequently, Solano's claims should be dismissed.

But even to the extent Solano's claims can be construed as a request for declaratory or injunctive relief—which are not barred under *Bivens* or *Minneci*—his claims should also be dismissed. Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To allege a constitutional violation, an inmate must show that the prison official acted with deliberate indifference toward his serious medical needs, resulting in an unnecessary and wanton infliction of pain. *Id*. Deliberate indifference includes both an objective and a subjective component. *Id.* at 410. Under this standard, a prison official is not liable unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837).

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Furthermore, a prisoner's disagreement with medical treatment does not state a claim for

4

deliberate indifference to medical needs under the Eighth Amendment, absent exceptional circumstances. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Indeed, to make a showing of deliberate indifference the prisoner must "submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)) (internal quotations omitted).

In this case, Solano alleges that his left eye was injured in an altercation with another inmate on July 7, 2012.[1] In his responses to the questionnaire, he claims he never received treatment for his injured eye. He lists Warden Dixon, Associate Warden Bryan, and "Dalby Facility Officers Johan Does 1–100" as Defendants. When asked to name the "Dalby Facility Officers Johan Does 1–100," he responded in the questionnaire that he did not wish to sue any other defendants other than the Dalby Facility and Warden Dixon. Solano does not therefore state any claim against the Johan Doe defendants. *See Watson*, 525 F.2d at 892 (holding that questionnaires "amplify the original allegations in the prisoner's complaint" and are "an integral part of that complaint").

The authenticated medical records show that the Dalby Facility medical staff examined Solano on July 7, 2012, before he was placed in the SHU. In his responses to the questionnaire, Solano denied that he received a medical examination on July 7; however, the authenticated medical records show that he was examined by Dalby Facility medical staff and was cleared for segregation. The authenticated medical records further show that Solano was examined at the Frasier Eye Center on July 31, 2012, based on his complaints of problems with his left eye following the altercation.

---

[1] In his responses to the questionnaire, Solano stated he was never charged at a disciplinary hearing for his actions, but he was placed in the Special Housing Unit (SHU) for three days.

Dr. Frasier noted that Solano had a lot of tearing and discharge in both eyes and that he used allergy drops in his eyes as needed.

Solano, in his responses to the questionnaire, agrees that he was examined again on August 9, 2012, for complaints of eye problems. The authenticated records show that Solano complained of small black spots in his vision at that examination. The Dalby Facility medical employee who examined Solano noted that he had cataracts and was scheduled for surgery to remove a cataract in his right eye; she recommended that Solano "see Dr. Polk" for his new complaint of spots in his left eye. Solano underwent cataract surgery on September 14, 2012.

On October 6, 2012, Solano was examined by an ophthalmologist due to his complaint of a "floater" in his left eye. The ophthalmologist noted the following: "no pathology seen that might be associated with floater symptoms." On October 30, 2012, Solano was examined by Dr. Frasier at the Frasier Eye Center for a follow-up appointment to his cataract surgery. At that time, Dr. Frasier recommended Solano undergo cataract surgery on his left eye.

Contrary to Solano's allegation that the Defendants refused to treat him or ignored his complaints, the authenticated medical records show that the Dalby Facility medical personnel responded to his ongoing complaints of problems with his left eye. *See Banuelos*, 41 F.3d at 235 (noting "records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference"). In his responses to the questionnaire, Solano states that he simply wants the Dalby Facility medical staff to examine his left eye. But overall, Solano's records indicate that he has received examinations and ongoing medical care for his complaints of left eye problems. His requests merely reflect disagreement with the medical treatment he received, which

is insufficient to give rise to a claim for deliberate indifference. *See Gobert*, 463 F.3d at 346; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Solano's medical records, together with his answers in the questionnaire, do not show that the Defendants demonstrated deliberate indifference to his medical needs. *Norton*, 122 F.3d at 292; *see also Banuelos*, 41 F.3d at 235 (finding medical examination and radiologist report rebutted inmate's claim of deliberate indifference). He has received ongoing treatment for his complaints of left eye problems, and he has been examined and treated several times for his cataracts. The Defendants' actions do not reflect that they disregarded a known substantial health risk that resulted in the "unnecessary and wanton infliction of pain." *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

What is more, Solano names Warden Dixon and Associate Warden Bryan, who both hold supervisory positions, as Defendants. In general, liability of government officials for the unconstitutional conduct of their subordinates may not rest solely upon a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A plaintiff must prove that each individual defendant, through his own actions, violated the plaintiff's constitutional rights. *Id.*

Here, Solano has failed to establish that Defendants Dixon or Bryan are subject to liability. As the court has already discussed, Solano has failed to state a claim for deliberate indifference to his serious medical needs. Moreover, Solano specifically stated in the responses to the questionnaire that he did not have personal contact with either Defendant Dixon or Defendant Bryan. He did not allege that either Defendant Dixon or Defendant Bryan implemented an unconstitutional policy that directly resulted in injury, nor did he allege that they failed to supervise or train a subordinate official. Rather, Solano states a claim against Defendants Dixon and Bryan solely based on their

7

positions as supervisors. Consequently, Solano has not alleged a claim of supervisory liability against Defendants Dixon and Bryan.

In sum, Solano has failed to allege that the Defendants engaged in the "egregious intentional conduct required to satisfy the exacting deliberate indifference standard." *See Gobert*, 463 F.3d at 351–52 (noting the lack of evidence to establish culpable intent).

## Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Solano's Complaint and all claims therein with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

Dismissal of this action should count as a qualifying dismissal—"a strike"—for purposes of the three strikes provision of the Prison Litigation and Reform Act (PLRA). Further, the dismissal should not release Solano or the institution of his incarceration from the obligation to pay the previously imposed filing fee. *See Williams v. Roberts*, 166 F.3d 1126, 1128 (5th Cir. 1997). Solano must therefore continue to pay the filing fee in monthly installments as ordered in the PLRA Filing Fee Order entered in this case.

## Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination

is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   March 27, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge